**SIGNED THIS: May 29, 2026**

_____

**Peter W. Henderson**
**Chief United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| **In re:** | |
| **BRADLEY J. KOETTERS and**<br>**KELLY N. KOETTERS,** | **Case No. 25-80895** |
| **Debtors.** | |

### OPINION

The Debtors' home mortgage lender objects to their subchapter V plan of reorganization. The lender contends that plans in Chapter 11, as opposed to those in Chapter 13, may not provide for the curing of a default on a home mortgage debt through deferred payments. Instead, it argues, any default must be cured as of the effective date of the plan. Although it is true that Chapter 11 differs in some respects from Chapter 13 on the subject, the two chapters permit the same thing: a plan may provide for the curing of a home mortgage default through deferred payments so long as the default is cured before the debtor exits bankruptcy. The Debtors' plan here so provides, so the lender's objection will be overruled.

## I.      Background

The Debtors, Bradley and Kelly Koetters, filed a petition under subchapter V of Chapter 11. They did so because their student loan debt exceeds $630,000, rendering them ineligible for Chapter 13. 11 U.S.C. §109(e). In all other respects, their case looks like one under Chapter 13: they both have regular income and are trying to save their house and car from foreclosure and repossession. Before filing for bankruptcy, they defaulted on their home mortgage. According to the mortgagee, NewRez LLC, they were in arrears to the tune of about $13,000 on a debt of about $125,000 at the time of the petition. NewRez's claim is secured only by a security interest in real property that is the Debtors' principal residence.

The Debtors do not have the means to immediately cure the pre-petition default. In their subchapter V plan, they therefore propose to "cure and maintain" the mortgage, which by its original terms matures in 2049, through payments from their future income. The pre-petition arrearage will be paid "within five years of the Effective Date in deferred Distribution(s) without interest or other charges … from funds paid into the Plan by the Debtors." No other modification will be made to the terms of the original note, and NewRez will retain its lien. NewRez, which the plan characterizes as an impaired claimholder, voted to reject the plan, and it has objected to confirmation. Relying on *In re Jacobs*, 644 B.R. 883 (Bankr. D.N.M. 2022), NewRez argues in relevant part that Chapter 11 does not permit the Debtors to cure a default on their home mortgage through post-confirmation payments. The Debtors counter that *Jacobs* is an outlier case that conflicts with two Illinois decisions, *In re LaPorta*, 578 B.R. 792 (Bankr. N.D. Ill. 2017), and *In re Lennington*, 288 B.R. 802 (Bankr. C.D. Ill. 2003) (Perkins, J.).

## II.     Individual Chapter 11 debtors may cure a home mortgage default through deferred payments.

Chapter 11 contains an "anti-modification" provision concerning home mortgages that is identical to that found in Chapter 13:

> The plan may modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. §1123(b)(5) (emphasis added); see 11 U.S.C. §1322(b)(2). The provision originated in Chapter 13 as part of the Bankruptcy Act of 1978; it was added to Chapter 11 in 1994 "to conform[] the treatment of residential mortgages in chapter 11 to that in

chapter 13." *LaPorta*, 578 B.R. at 798 (quoting legislative history). The "rights" that may not be modified are the contractual rights contained in the relevant mortgage instruments that the parties bargained for. *Nobelman v. American Savings Bank*, 508 U.S. 324, 329–30 (1993). For example, the parties here agreed that the Debtors would make a payment of $616.09 on the first day of each month beginning on December 1, 2019, until all principal, interest, and other charges are paid in full. A plan in bankruptcy may not modify NewRez's right to be paid on those terms. See *id*.

Despite the categorical language of the anti-modification provision, some changes to the parties' original bargain are permitted in bankruptcy. *Id*. at 330. For example, most mortgages permit the lender to accelerate the debt and foreclose by judicial proceeding in the event of default. The automatic stay of 11 U.S.C. §362 affects that right. *Id*. In addition, parts of chapters 11 and 13 permit a debtor to propose a plan that provides for the curing of a default to "de-accelerate" the debt and restore the parties to their original position. *Id*. When that happens, the lender's original rights are abrogated and therefore "modified," *Rake v. Wade*, 508 U.S. 464, 473 n.9 (1993) [1], but that sort of modification falls outside of the prohibition of the anti-modification rule because it is separately authorized by the Code. *Nobelman*, 508 U.S. at 330; see *Matter of Clark*, 738 F.2d 869, 871–72 (7th Cir. 1984) (giving effect to both anti-modification and ability-to-cure rules). In enacting the anti-modification rule, "Congress mandated no modifications of *future* payments on home mortgages…." *Wade v. Hannon*, 968 F.2d 1036, 1042 (10th Cir. 1992) (emphasis added), *aff'd sub nom. Rake*, 508 U.S. 464.

I describe below the various ways a debtor may cure a default on a home mortgage loan. In all cases, a "cure" refers to restoring matters to the *status quo ante*. *Clark*, 738 F.2d at 872. The return to the *status quo ante* is accomplished only once a default has been fully cured; "cure" is "the end, not the means." *Id*. Typically one cures a default by paying all amounts due and owing. *Id*. Once a debtor has cured a pre-petition default, the holder of the claim is restored to its original position. *Matter of Madison Hotel Associates*, 749 F.2d 410, 420 (7th Cir. 1984).

---

[1] *Rake* held that home mortgage lenders were entitled to interest under 11 U.S.C. §506(b) on pre-petition arrearages. Congress disagreed with that holding and soon enacted 11 U.S.C. §1123(d) and 11 U.S.C. §1322(e), which dictate that the underlying agreement and nonbankruptcy law, not §506(b), determine the amount required to cure a default. The new legislation did not upset *Rake*'s characterization of the anti-modification provision, though, so I treat *Rake*'s footnote as controlling law. See *Reich v. Continental Casualty Co.*, 33 F.3d 754, 757 (7th Cir. 1994); but see 8 Collier on Bankruptcy ¶1322.07[2] & n.8 (16th ed. 2026) (proposing slightly different characterization).

3

Given the general standard—a plan cannot modify the rights of a home mortgage lender, except as authorized by another part of the Bankruptcy Code—everyone seems to agree that a pre-petition default on a home mortgage loan may be cured in Chapter 11, because Chapter 11 authorizes a plan to provide for the curing of any default. 11 U.S.C. §1123(a)(5)(G). The disagreement concerns the timing of the cure; section 1123(a)(5)(G), unlike most other cure provisions in the Code, does not specify a time by which a debtor must cure the default. Compare with 11 U.S.C. §108(b)(2) (60 days after order for relief); §1110(a)(2) (same); §1168(a)(1)(B) (same); §365(b)(1)(A) (at assumption of contract or lease, or promptly thereafter); §1112(b)(2)(B) (within reasonable period of time); §1222(b)(5) (same); §1322(b)(5) (same). *LaPorta* and *Lennington* held that the cure may be effected through deferred payments over the life of the plan, just as in Chapter 13. *Jacobs* held that the cure must be complete as of the effective date of the plan. *LaPorta* and *Lennington* have the better view. Section 1123(a)(5)(G) confers the same power upon debtors to cure a home mortgage default as that conferred by its Chapter 13 complement, §1322(b)(3), which permits deferred payments while the debtor remains in bankruptcy.

### A.      The familiar paradigm: home mortgages in Chapter 13

To understand the interaction between the anti-modification rule and the debtor's ability to cure a home mortgage default, start with Chapter 13, where you find most debtors attempting to save their homes. Remember, Chapter 13 has the same anti-modification rule as Chapter 11; the ability to cure a default under any of the provisions below represents an exception to that rule.

First, and most commonly, a plan may provide for the curing of a default on a long-term mortgage that matures after the end of the Chapter 13 plan notwithstanding the anti-modification provision. 11 U.S.C. §1322(b)(5). No Chapter 13 plan may last more than five years, §1322(d), and most mortgages mature more than five years after a bankruptcy petition is filed, so most Chapter 13 debtors use §1322(b)(5) to "cure and maintain" their home mortgage obligations. Section 1322(b)(5) was the relevant exception to the anti-modification rule in *Rake*, *Nobelman*, and *Clark*, because those cases involved long-term mortgages.

Not all mortgages are set to mature after five years, however. Section 1322(b)(3) permits a plan to provide for the curing of any default, so when §1322(b)(5) is not available (because the maturity date comes before the plan end date), debtors may use §1322(b)(3) to cure a default on the home mortgage through post-confirmation payments. *In re Taylor*, 95 B.R. 48, 50–51 (Bankr. N.D. Miss. 1988) (citing cases); see *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236, 247 (5th Cir. 1984) (en

4

banc). The primary limitation most courts have read into §1322(b)(3), to avoid offending the anti-modification rule, is that a cure must be complete before the original maturity date; for example, a default on a loan that matures in two years must be cured within two years. See, *e.g.*, *In re Davis*, 91 B.R. 477, 482 (Bankr. N.D. Ill. 1988); but see, *e.g.*, *In re Bolden*, 101 B.R. 582, 584 (Bankr. E.D. Mo. 1989). When the parties bargained for the debt to be repaid by a date certain, it is impermissible to force the home mortgage lender to accept payments past that date, even if you call those payments a "cure." I assume, without deciding, that the decisions imposing that limitation are correct.

These days, you rarely see §1322(b)(3) invoked to cure a default on a short-term home mortgage, because an exception to the anti-modification rule for short-term mortgages was enacted in 1994. Section 1322(c)(2) now provides that, notwithstanding §1322(b)(2), a plan may provide for the payment of a claim secured by a home as modified under §1325(a)(5) so long as the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. Section 1325(a)(5) permits a plan to provide for the present value of the claim through equal monthly payments over the life of the plan. So short-term mortgage claims are now usually modified and paid in full, which obviates the need to cure a default.

In all cases, debtors will remain in bankruptcy for the duration of the plan, which generally lasts between three and five years. 11 U.S.C. §1325(b)(4). To cure a default, the plan must provide for payment of all amounts due and owing. *Clark*, 738 F.2d at 872. A debtor may not receive a discharge unless they have completed all payments under the plan. 11 U.S.C. §1328(a). The automatic stay remains in place until they do so. 11 U.S.C. §362(c)(2)(C). The *status quo ante* in Chapter 13 is thus realized when, at the conclusion of a plan, the debtor either is deemed current on the original obligation (§1322(b)(5)) or has paid the claim in full (§1322(b)(3) or (c)(2)). 8 Collier on Bankruptcy ¶1322.09[3] (16th ed. 2026). The debtor exits bankruptcy with a discharge of their other debts, the automatic stay terminates, and the home mortgage lender is restored to the position it would have been in had the debtor not defaulted or filed for bankruptcy.

### B.      The less frequent case: home mortgages in Chapter 11[2]

Chapter 11 contains some similar and some different provisions on curing defaults on home mortgages. Section 1123(a)(5)(G) permits a plan to provide for the curing of any default, just like §1322(b)(3). No analog to §1322(b)(5) exists in Chapter 11,

---

[2] This case was filed under subchapter V, so I use the subchapter V statutes for illustration. I do not perceive a difference in a debtor's ability to cure a home mortgage default between subchapter V and "regular" Chapter 11, though; both depend upon §1123(a)(5)(G).

but Chapter 11 does not limit the duration of a plan, so there is no need to provide for the situation in which a long-term debt will need to be paid after the plan is finished. *LaPorta*, 578 B.R. at 799. Another difference between Chapter 11 and Chapter 13 is that a short-term home mortgage may not be modified in Chapter 11; section 1322(c)(2) is unique to Chapter 13. *In re Crump*, 529 B.R. 106, 112 (Bankr. D.S.C. 2015). Finally, subchapter V contains its own unique exception to the anti-modification provision, but that exception is not relevant here. 11 U.S.C. §1190(3).

Because sections 1123(a)(5)(G) and 1322(b)(3) both permit a plan to provide for the curing of any default, they should be read as permitting the same treatment of home mortgage claims. See *Law v. Siegel*, 571 U.S. 415, 422 (2014). As noted above, §1322(b)(3) has long been understood to permit a home mortgage default to be cured through deferred payments over the course of a Chapter 13 plan, even though Chapter 13 has the same anti-modification rule as Chapter 11. There is no reason to think that §1123(a)(5)(G) is subject to more restrictions than §1322(b)(3). No reason, that is, other than the one expressed in *Jacobs*, which relied on a different cure provision found in 11 U.S.C. §1124(2). To understand that cure provision, though, one first needs to recognize a basic difference between Chapter 11 and Chapter 13.

Unlike in Chapter 13, plans in Chapter 11 are voted on by creditors. If all classes of claims vote to accept a plan, it may be confirmed as a consensual plan. 11 U.S.C. §1191(a), incorporating 11 U.S.C. §1129(a)(8). A class that is not "impaired" under the plan is conclusively deemed to accept the plan. 11 U.S.C. §1126(f). The confirmation of a consensual plan just about ends the bankruptcy case; the subchapter V trustee is relieved of their duties, §1183(c)(1), the debtor receives a prompt discharge, §1141(d)[3], and the automatic stay terminates, §362(c)(2)(C). The debtor quickly emerges from bankruptcy.

On the other hand, if an impaired class does not accept the plan, the plan may still be confirmed as a non-consensual, or "cramdown" plan—so named because it is "crammed down the throats" of objecting creditors. 11 U.S.C. §1191(b); see *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 647 (7th Cir. 2011). After confirmation of a cramdown plan, the case keeps going. The subchapter V trustee remains in place, and the discharge is delayed until completion of all payments due within the first 3 to 5 years of the plan. 11 U.S.C. §1192; see also 11 U.S.C. §1141(d)(5)(A) (similar treatment in "regular" Chapter 11 for individual debtors). The automatic stay remains in force. 11 U.S.C. §362(c)(2)(C). The debtor remains in limbo during the plan

---

[3] Section 1141(d)(5), which usually postpones an individual's discharge in Chapter 11, does not apply in subchapter V. 11 U.S.C. §1181(a).

6

period. Cramdown plans under subchapter V, and all individual plans[4] under regular Chapter 11, resemble Chapter 13 plans in that the debtor's "fresh start" is contingent upon completing years' worth of payments under the plan.

Whether a plan can be confirmed as a consensual plan thus often comes down to whether a class is impaired. Section 1124 defines impairment broadly; a class is impaired unless specifically excepted. Of course, a class is not impaired if the plan does not affect its rights in any way. 11 U.S.C. §1124(1). A class is also unimpaired if the plan cures any default, reinstates the maturity of the claim, appropriately compensates for any damages or loss, and does not otherwise alter the legal, equitable, or contractual rights of the claimholder. 11 U.S.C. §1124(2).

To cure a default under §1124(2), and therefore to "un-impair" a class of claims, the debtor must cure the default at confirmation (as of the "effective date of the plan," see *In re Rhodes*, 668 B.R. 487, 489 (Bankr. E.D. Wis. 2025)), rather than provide for the curing of the default over time. *Jacobs*, 644 B.R. at 901 & n.75 (citing cases). A creditor should only be deemed to have accepted the plan, §1126(f), if it is restored to its original position by the plan at the time of confirmation. "The effect of §1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if 'cure' occurs in full and immediately." *In re Schatz*, 426 B.R. 24, 27 (Bankr. D.N.H. 2009). The creditor is deemed to accept the plan because a creditor cannot object to being treated exactly as it would have been treated under the original terms of its contract. *Madison Hotel Associates*, 749 F.2d at 420; cf. §1124(1). The *status quo ante* must be realized at the time of confirmation to take away the voting rights of a class or claimholder, so that is when the cure must be complete.

One path, therefore, for an individual seeking to save their home in subchapter V, is to cure the default at confirmation to un-impair the home mortgage lender. See §1124(2). (Alternatively, they can propose a plan that is acceptable to the lender.) In that case, their plan would meet the criteria of §1129(a)(8) and may be confirmed as a consensual plan under §1191(a). The debtor would not remain in bankruptcy for long. Having either restored their original agreement or agreed to a different treatment with the mortgagee, they have resolved the temporary crisis that required the intervention of bankruptcy and so are entitled to a prompt fresh start.

---

[4] Organizational cramdown plans are not implicated here because §1123(b)(5), by prohibiting modifications concerning the principal residence of the debtor, necessarily only applies when the debtor is an individual. 7 Collier on Bankruptcy ¶1123.02[5] (16th ed. 2026).

7

The other path is to keep the mortgagee impaired and propose a plan that provides for the curing of the default over time. See §1123(a)(5)(G). Presuming the lender does not agree to that treatment, the plan may be confirmed only through cramdown, §1191(b). In that event, the *status quo ante* need not be restored at the time of confirmation, because the debtor will remain in bankruptcy for three to five years. 11 U.S.C. §1192. While the case pends, the lender will receive the protections given to secured creditors who are forced to endure a debtor's reorganization. See 11 U.S.C. §1191(c)(1), incorporating §1129(b)(2)(A)'s "fair and equitable" requirements; compare with 11 U.S.C. §1325(a)(5).

Section 1124(2) therefore provides an individual debtor in subchapter V with a shortcut. They already have the power to cure any default, including that on a home mortgage loan, under §1123(a)(5)(G). If they wish to emerge from bankruptcy more quickly, they can propose a plan that goes beyond the requirements of §1123(a)(5)(G) by curing the default immediately, thereby un-impairing the home mortgage lender under §1124(2) and facilitating a consensual plan. Compliance with §1124(2) is irrelevant, though, if the debtor seeks instead to confirm a cramdown plan. Section 1123(a)(5)(G) "does not require that every cure leave the holder of the claim unimpaired"; the Code "does not precisely equate curing a default with unimpairment of a claim." *In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667, 671, 676 n.5 (Bankr. S.D. Tex. 2010). Section 1124(2) must be considered as an additional, not exclusive, power to cure a home mortgage default under Chapter 11. Because *Jacobs* focuses only on §1124(2)—it fails to even mention §1123(a)(5)(G)—it is not persuasive. 644 B.R. at 894–906.

> **C.      Chapters 11 and 13 both permit a debtor to make installment payments while they remain in bankruptcy to cure a home mortgage default.**

There is no single path in either Chapter 11 or Chapter 13 to cure a default on a home mortgage. One cannot broadly say that defaults should or should not be treated the same way in Chapters 11 and 13, because even within each chapter they may be treated differently. Still, all paths lead to the same outcome: at the time the debtor emerges from bankruptcy with their fresh start, their relationship with their home mortgage lender must be restored to the *status quo ante* to avoid offending the anti-modification provision. A debtor may not use bankruptcy to rewrite their relationship with their home mortgage lender going forward, but bankruptcy gives them the power to repair the past. Cf. *In re Garcia*, 276 B.R. 627, 635 (Bankr. D. Ariz. 2002).

In Chapter 11, an individual debtor may propose a plan that impairs an objecting home mortgagee by providing for the curing of a default on or before the time the debtor receives a discharge. That rule (1) gives the same effect to similar language in

8

§1123(a)(5)(G) and §1322(b)(3); (2) comports with legislative history suggesting that home mortgages should receive the same treatment in Chapters 11 and 13; (3) recognizes the difference between the ability to provide for the curing of a default, §1123(a)(5)(G), and the ability to cure a default immediately to un-impair a class of claims, §1124(2); and (4) accords with the balance struck throughout the Bankruptcy Code between the debtor's fresh start and a home mortgage lender's rights.

Note finally that compliance with the anti-modification rule of §1123(b)(5) is not the only requirement for confirmation. Among other things, a plan must be proposed in good faith, and a cramdown plan must be "fair and equitable." 11 U.S.C. §1129(a)(3), (b)(1). The plan must be feasible. 11 U.S.C. §1129(a)(11) and §1191(c)(3). This opinion addresses only the discrete issue of whether §1123(a)(5)(G) authorizes a plan to provide for the curing of a default on a home mortgage through deferred payments.

### III.    Conclusion

The Debtors here may cure a default through deferred, post-confirmation payments because that power, which derives from §1123(a)(5)(G), is equivalent to the power given to Chapter 13 debtors in §1322(b)(3). True, use of that power as proposed impairs NewRez's claim, because the parties' original relationship will not be restored as of the effective date of the plan. But to the extent that it will return the parties to the *status quo ante* by the time the Debtors exit bankruptcy, the plan comports with §1123(a)(5)(G)'s exception to the anti-modification provision of §1123(b)(5).

NewRez has lodged several objections to the Debtors' plan in addition to contending that deferred cure payments are impermissible. Because the plan may provide for the curing of default through deferred payments, that objection is OVERRULED. A continued confirmation hearing remains scheduled for June 15, 2026, at which NewRez and other parties in interest may continue to assert other objections.

# # #

9